NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**FLEXITEEK AMERICAS, INC., a Florida corporation, FLEXITEEK INTERNATIONAL AS, a foreign corporation,**
*Plaintiffs-Appellants*

**v.**

**PLASTEAK, INC., an Ohio corporation, PLASDECK, INC., an Ohio corporation,**
*Defendants-Appellees*

---

2014-1214

---

Appeal from the United States District Court for the Southern District of Florida in No. 0:12-cv-60215-PAS, Judge Patricia A. Seitz.

---

Decided: March 19, 2015

---

SCOTT D. SMILEY, The Concept Law Group. P.A., Fort Lauderdale, FL, argued for plaintiffs-appellants. Also represented by MARK C. JOHNSON; MICHAEL I. SANTUCCI, Santucci, Priore, & Long, LLP, Fort Lauderdale, FL.

RONALD S. KOPP, Roetzel & Andress, Akron, OH, argued for defendants-appellees. Also represented by VIJAY GIBRAN BRIJBASI, Ft. Lauderdale, FL.

———————————

Before PROST, *Chief Judge,* BRYSON and WALLACH, *Circuit Judges.*

PROST, *Chief Judge*.

Flexiteek Americas, Inc. and Flexiteek International AS appeal from the United States District Court for the Southern District of Florida's claim construction of "longitudinal slots" and summary judgment of non-infringement regarding United States Patent 6,895,881 ('881 patent). For the reasons stated below, we affirm.

## BACKGROUND

Appellants are the owners of the '881 patent, entitled "shape conforming surface covering." The invention at issue in this case is extruded plastic planks that may be used in covering floors, walls, yacht decks, etc. The plastic planks are more durable and require much less upkeep than the traditional exotic woods used for the aforementioned purposes. Furthermore, the planks are inherently flexible. The '881 patent describes the invention as follows:

> A shape conforming surface covering useful for covering any type of surfaces, and comprising planks or sheet of a plastic or flexible material adapted to be interconnected aside of each other thereby forming an assembled surface covering of optional length and width, and which planks or sheet are of a material that can be brought to curved formations, and which at the upper surface of the covering is roughened, for instance sanded or filed so as to imitate any unique grain effect of wooden material. Preferably the planks or sheet

are formed with connection means at the longitudinal edges thereof.  The surface covering may be an assembled unit comprising planks and caulking elements between each pair of planks.

'881 patent abstract.  While claim 1 was cancelled on reexamination it remains in play as claims added during the reexamination depend from it.  Therefore, it along with claim 2, are representative.  Claim 1 reads:

A shape conforming surface covering useful for covering any type of surfaces, characterized in that the surface covering comprises planks or sheet of a flexible material adapted to be interconnected aside of each other thereby forming an assembled surface covering of optional length and width, and which planks are of a material that can be laid in curved formations, and which at the upper surface of the covering is roughened so as to imitate any unique grain effect of wooden material, further characterized in that the planks or sheet are formed with longitudinal slots at the underside thereof for facilitating forming of curved coverings and for acting as a base for a glue or adhesive material by means of which the surface covering is mounted on a surface recipient.

Claim 2 reads:

The shape conforming surface covering of claim 1, wherein the planks or sheet are mounted on the surface recipient in a tightly curved formation only with adhesive and without use of additional fasteners.

In the initial suit ("*Flexiteek I*"), Appellants obtained a jury verdict of patent infringement of claim 1 of the '881 patent against Defendants-Appellees Plasteak, Inc. and Plasdeck, Inc.  Appellees appealed and the Federal Cir-

cuit affirmed. Following the appeal, Appellees petitioned the U.S. Patent and Trademark Office ("USPTO") for an *ex parte* reexamination. The USPTO granted the petition, and ultimately invalidated claim 1 of the '881 patent and issued a reexamination certificate with new claims 2-29. Notably, claims 2 through 8 continue to depend on invalidated claim 1. Appellees then petitioned the district court for relief from the Final Judgment as it was based on now cancelled claim 1, the district court granted the requested relief.

Appellants then filed a second suit against the same defendants alleging, in relevant part, infringement of the reissued '881 patent. During the course of litigation, the parties filed individual *Markman* briefs. The district court subsequently struck the parties' *Markman* briefs and ordered the parties to submit a joint claim construction brief. The district court additionally ordered a technology tutorial. Although the Appellants objected, the court ordered that the Appellants' commercial products and Appellees' accused products be presented at the tutorial. Following the tutorial, the district court asked the parties if they wanted a *Markman* hearing. Both parties informed the district court that they did not. Following additional briefing, the district court issued its claim construction order. Appellees then moved for summary judgment of non-infringement, which the district court granted.[1] The Appellants now appeal both the district court's claim construction and summary judgment ruling. We have jurisdiction of this appeal under 28 U.S.C. § 1295(a).

---

[1] Other claims were also addressed in the summary judgment, but they are not relevant here.

DISCUSSION

While the ultimate construction of a claim term is a legal question reviewed de novo, underlying factual determinations made by the district court are reviewed for clear error. *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 842 (2015). Specifically, "when the district court reviews only evidence intrinsic to the patent (the patent claims and specifications, along with the patent's prosecution history), the judge's determination will amount solely to a determination of law, and the Court of Appeals will review that construction de novo." *Id*. at 841. However, when the district court looks beyond the intrinsic evidence and consults extrinsic evidence, for example to understand the relevant science, these subsidiary fact findings are reviewed for clear error. *Id*.

The challenge here goes to the district court's construction of the term "longitudinal slots." The district court construed the term "longitudinal slots" as:

> Grooves spaced relatively close together that run parallel to each other for the length of the planks or sheet, wherein the grooves have a depth and width of a material percentage of the planks' or sheets' thickness such that the grooves materially increase the ability to curve and the surface area for adhesion.

*Flexiteek Americas, Inc. v. PlasTEAK, Inc.*, 2013 WL 3762290, at *4 (S.D. Fla. July 16, 2013). The district court analyzed the relevant claim term in two parts, "slot spacing" and "depth and width." Pertaining to "slot spacing," the district court determined that the specification showed that the slots must run parallel to each other, be spaced relatively close together, and be equally spaced. Furthermore, the district court concluded, on the basis of expert declarations, that one skilled in the art "would understand that to achieve tight curving with only the use of glue or adhesive, the primary advancement of the

invention, the longitudinal slots should run parallel to each other and be spaced in a close-together pattern." *Id.*, at *2.

The district court additionally analyzed "longitudinal slots" in reference to their "depth and width." The district court found that the invention was an enhancement of the normal extrusion process. The normal extrusion process aligns the plank's molecules in the direction of extrusion, which results in an extra degree of flexibility as compared to the inherent flexibility of the material itself. The district court then found that the invention attempted to mimic these molecular arrangements by making additional slots on the bottom of the planks, thereby increasing the flexibility beyond what is possible by the extrusion process alone. Thus, the district court found that "characterizations of depth and width should be included in the construction of 'longitudinal slots'" as it is necessary for the term's construction to embody the "essence of the invention." *Id.*, at *3, *4.

Appellants present four main arguments regarding why the district court's claim construction is wrong. First, they argue that the district court's claim construction was poisoned by the use of samples of the Appellants' and Appellees' commercial embodiments during the technology tutorial. Second, they contend that the district court construed the claim term contrary to the intrinsic evidence. Third, they argue that the district court construed the claim term contrary to three USPTO Examiners during a reexamination proceeding. Fourth, and finally, they argue that the district court construed the term contrary to the broader definition given by the district court in *Flexiteek I*. We reject all of these arguments.

District courts are free to conduct technology tutorials when the district court determines that the tutorial will aid the court. Furthermore, there is no per se rule that

district courts cannot order a party to bring commercial embodiments to the tutorial to aid the court in understanding the technology at issue. Additionally, Appellants' argument that the court was biased by the technology tutorial is without merit. Not only does the district court's *Markman* opinion not reference the technology tutorial or the commercial embodiments, but a technology tutorial is not a *Markman* hearing. This is especially true here, where Appellants were asked by the court if they wished to have a *Markman* hearing following the technology tutorial, and the Appellants declined the offer.

We conclude that the district court properly construed the term "longitudinal slots" in light of both the intrinsic and extrinsic evidence. The patent's specification provides two illustrations of the longitudinal slots, figures 1 and 6. In both of these figures the longitudinal slots are depicted as being evenly spaced and running the length of the material. There is no other reference in the patent specification that provides an alternative definition or illustration of the longitudinal slots. Furthermore, while the figures do not specify exact depth ranges for the longitudinal slots, they do show that the slots have a non-insignicant depth.

Additionally, during the reexamination Dr. C.K. Rhee, Flexiteek's expert, asserted that the use of longitudinal slots on the underside of the material represented the true invention of the patent. In reaching this conclusion Dr. Rhee acknowledged that the extrusion process itself made the material inherently more flexible. Thus, he stated that the longitudinal slots added an extra degree of flexibility along the axis of extrusion, which was greater than the material's inherent flexibility. Dr. Rhee also stated that the inventor, "greatly enhanced the degree of flexibility that would have been inherent to the material itself by adding a series of longitudinal slots and/or ribs in *a very tight pattern* on the underside of the plank or

sheet. . . . The close longitudinal slots substantially increase the mechanical ability of the sheet and plank to curve." J.A. 789 (emphasis added). With the aforementioned findings in mind, along with the district court's factual findings, we uphold the district court's claim construction as it relates to "longitudinal slots."

Even under the district court's original claim construction, Flexiteek maintains that the district court erred in granting summary judgment of non-infringement. The Appellants maintain that the district court erred by both failing to identify the size of the sheet that the court was analyzing and by not identifying its basis for finding that slots that repeat every two inches do not increase a board's flexibility. Conversely, the Appellees argue that the district court's analysis was correct as it required that the slots materially increase the ability of the boards to curve, something that could not be accomplished with the accused products.

The Appellees' products can be roughly divided into two categories, Shiplap design products and T-Shaped design products. See below.



**Shiplap Design**

**"T"-Shaped Design**

Regarding the Shiplap design, the district court found that there was only a single recess, and thus there could

be no infringement as "longitudinal slots" inherently require at least two recesses. We agree. The claim construction of "longitudinal slots" requires that a plank have "grooves," i.e. more than one groove. As the Shiplap design has no more than a single groove, it does not meet the "longitudinal slots" claim limitation, and thus summary judgment for the Appellees is warranted.

Turning to the T-Shaped design, the district court found that even if the edges were found to be slots, the side edges do not constitute slots as defined by the patent claims as they are not relatively close together. In reaching its decision, the district court relied on Dr. Rhee's expert report, submitted during the reexamination, that confirmed that the longitudinal slots taught by the '881 patent are found on the underside of the individual planks of the flooring material and thus materially increase the ability of the planks to curve. Again we agree with the district court's analysis. The T-Shape design has at most two grooves on opposite sides of the plank. The claim limitation "longitudinal slots" require that the grooves be spaced relatively close together; it is axiomatic that grooves on opposite sides of a plank could not meet the claim limitation requiring that the grooves be "relatively close together." Furthermore, the Appellants own expert explains that in order to increase the flexibility of the planks, it is necessary that the longitudinal slots be positioned in a very tight pattern. J.A. 789. Again, having slots on either side of a plank is not consistent with being in a "very tight pattern." Therefore we affirm the district court's grant of summary judgment as it relates to the T-Shape products.

We have reviewed Appellants' remaining arguments and find them unpersuasive.

## CONCLUSION

For the reasons stated above, we affirm the judgment of the District Court for the Southern District of Florida

as it pertains to the claim construction of the phrase "longitudinal slots" and the district court's summary judgment ruling as it pertains to non-infringement.

**AFFIRMED**